UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TERESA ERRICO,<br><br>      Plaintiff,<br><br>      v.<br><br>J.C. PENNEY CORP., INC.,<br><br>      Defendant. | Civ. Action No.<br>16-11086-FDS |

# MEMORANDUM AND ORDER ON DEFENDANT'S
# MOTION FOR SUMMARY JUDGMENT

**SAYLOR, J.**

This is a negligence case seeking recovery for personal injury. Plaintiff Teresa Errico alleges that she tripped and fell on a negligently maintained rug in a store operated by defendant J.C. Penney Corp., Inc. J.C. Penney has moved for summary judgment in its favor. For the reasons described below, that motion will be granted.

## I. Background

### A. Factual Background

The following facts are either undisputed or set forth in the light most favorable to the plaintiff.

Teresa Errico is a resident of Massachusetts. (Compl. ¶ 1 (stating plaintiff lives in Woburn); Def. SMF Ex. E (stating plaintiff's home address is in Billerica); Def. SMF Ex. I (stating that plaintiff's address is in Burlington)). J.C. Penney is a Texas corporation with a principal place of business in Texas. (Compl. ¶ 2). J.C. Penney operates a store in Natick, Massachusetts, as part of the Natick Collection. (*See id.* ¶ 4; Def. SMF ¶ 4).

On June 8, 2015, Errico and her daughter, Teresa Baumann, came through an exterior entrance to the J.C. Penney store in Natick. (Compl. ¶¶ 4-5; Def. SMF ¶ 4, Ex. E at Answer 12, 14). Baumann entered the store "steps" ahead of her mother. (Def. SMF ¶ 6, Ex. F at 23-24, Ex. G). Errico tripped and fell as she was entering the store, injuring herself. She alleges that she tripped on the rug by the door, which was allegedly "curled up" or "lifted up." (Compl. ¶ 5; Def. SMF ¶ 4, Ex. E at Answer 15).

Baumann testified that she was not looking at the rug when she walked in, and did not notice whether it was lifted or not before the incident. (Def. SMF ¶ 9, Ex. F at 31-32). After her mother fell, Baumann saw that the rug had been lifted. (Def. SMF ¶ 10, Ex. F at 30, 34-37). Baumann at one point testified that "the girl from J.C. Penney" came and flattened it, but later said "I think they came over to look at the rug. I don't know if they fixed it. . . . I'm trying to think. I would say—probably I shouldn't say that I seen somebody actually doing that. I don't know." (Def. SMF ¶ 10, Ex. F at 33, 44).

Errico testified that she never noticed the rug either before or after the fall. (Def. SMF ¶ 13, Ex. H at 80-81). When asked if she had any evidence as to what caused her fall, she stated:

    A. The rug because it caught my foot.

    Q. And did it catch the front of your foot or the heel of your foot?

    A. The whole foot.

(Def. SMF Ex. H at 80-81).

Photographs of the area were taken following the fall and later attached to an incident report prepared by J.C. Penney staff. Those photographs show part of a flat mat, slightly out of alignment, leading from the exterior door to steps inside the store. (Def. SMF Ex. I).[1]

---

[1] In her statement of material facts, plaintiff contends that the photos do not show "the front of the rug (as one enters the building)" and that it is not discernable from the surveillance video whether the front of the rug is

A surveillance video recorded the incident. The video begins at 2:35 p.m. (Def. SMF Ex. G at 14:35:33.00). It shows that one customer, in addition to Baumann, entered the store without incident immediately prior to Errico. (*Id.* Ex. G at 14:35:33.00-14:36:00.00). It shows that Errico came through the door; turned slightly behind her, as if to close the door; and turned back toward the interior of the store. She then tripped, stumbled a step or two forward, reached her hand out in front of her as if to grab a railing, and fell at the foot of the stairs. (*Id.* Ex. G at 14:35:56.00-14:36:05.00). No movement of the rug is discernible in the video.

The video also shows the aftermath of the accident, including paramedics taking Errico away on a stretcher at 2:55 p.m.; J.C. Penney staff cleaning up the scene; and staff taking what appear to be the photographs included with the incident report. (*Id.* Ex. G at 14:55:30.00; 14:56:33.00-15:00:20.00; 15:00:49.00-15:01:15.00; *see id.* Ex. I). After taking the photos, a J.C. Penney employee pulled the rug from the right side (facing the door) to align it with the door, but it does not appear that the rug was straightened or flattened prior to that point. (*Id.* Ex. G at 15:01:17.00-15:01:22.00). The video ends at 3:03 p.m. (*Id.* Ex. G at 15:03:53.49).

Alva Samayoa, a J.C. Penny Loss Prevention Manager, submitted an affidavit stating that it is J.C. Penney's business practice to make the store's loss prevention manager aware of any injuries. (Def. SMF Ex. J ¶ 6). According to Samayoa, on a typical summer Monday more than 250 people use the store's exterior entrance before 3:00 p.m. (*Id.* Ex. J ¶ 5). He stated that no incidents were reported to him prior to Errico's fall that day. (*Id.* Ex. J ¶ 7).

Errico suffered a broken arm in the fall, a cut to her face that required stitches, and

---

lifted or not. (Pl. SMF ¶ 4). Plaintiff is correct that the photographs mostly show the part of the rug in front of the stairs, and the one picture of the side of the rug by the door shows only about three-quarters of the edge of the mat. The surveillance video has a view of the part of the rug in front of the door, but is too blurry to determine whether the rug is totally flat, or "lifted" in some way. (Def. SMF Ex. G).

3

loosened teeth. (Def. SMF Ex. E at Answer 9, Ex. H at 82-83).

B. **Procedural Background**

This case was filed in state court and removed to this Court on June 10, 2016. Defendant moved for summary judgment on September 11, 2017. Plaintiff filed an opposition more than two weeks late, on October 25, the day before the hearing. The Court held the hearing as scheduled on October 26.

II. **Standard of Review**

The role of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990)) (internal quotation mark omitted). Summary judgment is appropriate when the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Essentially, Rule 56[] mandates the entry of summary judgment 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Coll v. PB Diagnostic Sys., Inc.*, 50 F.3d 1115, 1121 (1st Cir. 1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). In making that determination, the court must "view the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." *Noonan v. Staples, Inc.*, 556 F.3d 20, 25 (1st Cir. 2009). When "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation marks and footnotes omitted). The non-moving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence." *Id.* at 256-57.

**III.     Analysis**

The one-count complaint alleges that J.C. Penney was negligent.  "Negligence is the failure to exercise that degree of care which a reasonable person would exercise in the circumstances." *Guzman v. Pring-Wilson*, 81 Mass. App. Ct. 430, 432 (2012) (quoting *Morgan v. Lalumiere*, 22 Mass. App. Ct. 262, 267 (1986)).  "To prevail on a negligence claim, a plaintiff must prove that the defendant owed the plaintiff a duty of reasonable care, that the defendant breached this duty, that damage resulted, and that there was a causal relation between the breach of the duty and the damage." *Cracchiolo v. E. Fisheries, Inc.*, 740 F.3d 64, 69 (1st Cir.2014) (quoting *Jupin v. Kask*, 447 Mass. 141, 146 (2006)); *see also Lev v. Beverly Enters.-Massachusetts, Inc.*, 457 Mass. 234, 239-40 (2010).

Where, as here, the plaintiff is an invitee who is "invited onto the property by the property owner for the property owner's benefit, the property owner owe[s] a duty to use reasonable care to keep the premises in a reasonably safe condition in view of all the circumstances." *Papadopoulos v. Target Corp.*, 457 Mass. 368, 371 (2010) (internal quotation marks and citations omitted) (emphasis omitted).  In slip-and-fall cases involving business premises, the plaintiff must generally show that the business "caused a substance, matter, or item to be on the floor; the [business] operator had actual knowledge of its presence; or the substance, matter, or item had been on the floor so long that the [business] operator should have been aware of the condition." *Sheehan v. Roche Bros. Supermarkets, Inc.*, 448 Mass. 780, 782-83 (2007); *see also Morrison v. Yum! Brands, Inc.*, 53 F. Supp. 3d 437, 441-42 (D. Mass. 2014).

In limited circumstances, a business owner can be liable for adopting a "mode of operation" that makes a particular hazard foreseeable. *Bowers v. P. Wile's, Inc.*, 475 Mass. 34 (2016).  That doctrine arose in the context of self-service stores, and has not been widely applied outside of that context.  To proceed under that theory, the SJC has "required a plaintiff to

5

establish a 'particular' mode of operation that makes the hazardous condition foreseeable, and a 'recurring feature of the mode of operation,' rather than one where the risk only 'conceivabl[y]' could arise from the mode of operation." *Bowers*, 475 Mass. at 41 (alteration in original) (quoting *Sarkisian v. Concept Restaurants, Inc.*, 471 Mass. 679, 684, 687 (2015)) (footnote omitted). "Indeed, 'nearly every business enterprise produces some risk of customer interference,' and, in the absence of limiting principles, '[a] plaintiff could get to the jury in most cases simply by presenting proof that a store's customer could have conceivabl[y] produced the hazardous condition.'" *Id.* at 40-41 (alterations in original) (quoting *Chiara v. Fry's Food Stores of Ariz., Inc.*, 152 Ariz. 398, 400-01 (1987)).

As an initial matter, there is little evidence that the rug was in a hazardous condition before the accident. Neither Errico nor her daughter noticed the rug before the incident. (Def. SMF Ex. F at 32-33, Ex. H at 80-81). The surveillance video shows Baumann and another customer entering the store uneventfully, and the door opening and closing, away from the rug, without apparent difficulty. (*Id.* Ex. G). The affidavit from the store loss-prevention manager estimated that about 250 people entered the store that day prior to Errico without incident. (*Id.* Ex. J ¶¶ 5-7). While Baumann testified that she saw that the rug was lifted up after Errico's fall, (*id.* Ex. F at 34-37), that is not particularly probative of the rug's prior condition, because the fall could have caused the rug to move. Therefore, the only evidence that the rug was lifted before the fall is Errico's testimony that the rug caught her whole foot. (*Id.* Ex. H at 80-81).

In any event, even assuming that the rug was in a hazardous condition prior to the accident, there is no evidence that J.C. Penney either caused that condition or had actual notice of it beforehand. Errico does not argue otherwise. Instead, she argues constructive notice: she contends that the rug was in a hazardous condition for an unknown period of time, but from at

6

least as long as the start of the surveillance video. The surveillance video submitted to the Court shows a period of 31 seconds prior to the fall. (Def. SMF Ex. G). That is not enough evidence for a reasonable jury to conclude that the alleged hazardous condition existed long enough to provide constructive notice to the store. *See Morrison*, 53 F. Supp. 3d at 442 (holding that where plaintiff submitted "no evidence as to how long the [hazardous condition] existed, . . . no inference can be drawn about whether it should have been noticed by defendant's employees"); *Prestopino v. Shaw's Supermarkets, Inc.*, 2002 WL 207584, at *2 (Mass. App. Ct. Feb. 6, 2002).

Errico's second theory is that it was negligent for defendant to have placed a rug so near the door, where it would be traversed by hundreds of people, without fastening it down.[2] She contends that there is a genuine issue of material fact as to whether the placement and securing of the rug was foreseeably dangerous.

Although Errico insists that the question of dangerousness is a question of fact, she does not cite to any evidence supporting her position that the rug here was dangerous. There is no evidence that placing an unsecured rug near a door could reasonably be considered hazardous. And there is no evidence that the rug was lifted because of its placement near the door; that J.C. Penney had ever had any problems with an unsecured rug near a door being lifted; or even that unsecured rugs generally placed near doors have a higher probability of being lifted.

Furthermore, the photographs of the rug in question show what appears to be an ordinary heavy-duty commercial door mat with a rubber backing, of a type used in heavily trafficked areas to prevent customers from slipping on water or dirt tracked in by other customers. (*See* Def. SMF Ex. I). It is commonplace for such rugs to be placed in front of doors; indeed, one

---

[2] The Court notes that neither the complaint nor plaintiff's statement of material facts alleges that the rug was not fastened securely. The Court will accept for purposes of this motion that it is an undisputed fact that the rug was not fastened to the floor.

7

could easily imagine a case where the *absence* of such a rug would be considered a breach of duty. At a minimum, if there is anything unreasonable about the use of such a rug, at such a location, without securing it to the floor, expert testimony would be required to establish that proposition.

Errico contends that this case is like *Bowers*, where a premises owner was held liable for a plaintiff's injury after she tripped on a stone that had migrated from a gravel area to the walkway, because it was reasonably foreseeable that customers shopping for the landscaping items in the gravel area would kick stones onto the walkway. 475 Mass. at 37, 41-43. But in *Bowers*, there was evidence that the owner "was aware that stones could be dislodged by people walking in the gravel area, and could end up on the walkway, creating a potential tripping hazard," and that "[a]s a result, [the owner] had developed a practice of having employees inspect the walkway to make sure that it was free of stones." *Id.* at 37. There is no similar evidence here. At the summary judgment phase, the non-moving party may not rest on attorney argument, but instead must "present affirmative evidence" to prove the facts material to her case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 256-57.

It is the plaintiff's burden in a negligence action to show that the defendant breached its duty of care. While it is certainly true that fastening the rug to the floor would have prevented it from lifting up, the mere assertion of that fact does not create a genuine issue of fact as to whether the placement of the rug, or the failure to secure it, was unreasonable. There must be some evidence to support such a claim. Here, Errico has not presented any evidence to support her claim that placing an unsecured rug near a door is unreasonable, and therefore has failed to show there is a genuine issue of fact precluding the entry of summary judgment.

**IV. Conclusion**

For the foregoing reasons, defendant's motion for summary judgment is GRANTED.

**So Ordered.**

                                                  /s/ F. Dennis Saylor
                                                  F. Dennis Saylor, IV
Dated: December 6, 2017                         United States District Judge